2022 PA Super 140

| | | |
|---|---|---|
| MARK AND LEAH GUSTAFSON, INDIVIDUALLY AND AS ADMINISTRATORS AND PERSONAL REPRESENTATIVES OF THE ESTATE OF JAMES ROBERT ("J.R.") GUSTAFSON | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| | : | No. 207 WDA 2019 |
| v. | : : : | |
| SPRINGFIELD, INC. D/B/A SPRINGFIELD ARMORY AND SALOOM DEPARTMENT STORE AND SALOOM DEPT. STORE, LLC D/B/A SALOOM DEPARTMENT STORE, | : : : : : : | |
| Appellees | : : | |
| THE UNITED STATES OF AMERICA | : : : | |
| Intervenor | : | |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 1126 of 2018

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

DISSENTING OPINION BY OLSON, J.: **FILED: AUGUST 12, 2022**

As I believe that the trial court was correct in dismissing this action, I must respectfully dissent from the Per Curium Order to Reverse.

**I.**

I agree with Part I of Judge Kunselman's Opinion in Support of Per Curium Order to Reverse. Specifically, I believe that the federal statute

entitled the Protection of Lawful Commerce in Arms Act of 2005, 15 U.S.C. §§ 7901-7903 ("PLCAA"), bars the product liability lawsuit filed by Mark and Leah Gustafson against the Appellees as a result of the tragic death of their son, J.R. However, I part company with my colleagues who conclude that PLCAA is unconstitutional. Instead, I believe, as the many courts who have considered these constitutional arguments have concluded, that PLCAA is constitutional. Therefore, I would affirm the trial court's order sustaining the Appellees' preliminary objections and dismissing the Gustafsons' complaint with prejudice. I write separately to address the constitutional arguments raised by the Gustafsons.

## II.

### The Enactment of PLCAA

In the late 1990s and early 2000s, an increase in gun violence in the nation's municipalities prompted gun control advocates to seek stricter laws governing the manufacture and sale of firearms. When state legislatures failed to pass such laws, advocates for stricter firearms regulations turned to the courts for redress resulting in an increase of lawsuits being filed against the firearms industry. In light of the increase in such lawsuits and the impact such suits would have on consumers and the marketplace, Congress enacted PLCAA in 2005. The purpose of PLCAA was to prevent lawsuits against "manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended . . . for the harm caused by the misuse of firearms by third parties, including criminals". 15 U.S.C. § 7901(a)(3). In the lengthy

debates that preceded the passage of PLCAA, Congress highlighted the extensive costs associated with litigation brought against the firearms industry and the impact those costs have on the industry and the consumers. Bankruptcy was perceived as a threat to the industry and the many workers employed therein. 151 Cong. Rec. S9807-01 (daily ed. June 27, 2005) (statement of Sen. Baucus) (the expenses associated with the lawsuits are "a significant drain on the firearms industry, costing jobs and millions of dollars, increasing business operating costs, including skyrocketing insurance costs, and threatening to put dealers and manufacturers out of business"). Moreover, concerns were expressed of the harm that could befall the United States military as domestic gun manufacturers supply the military with necessary firearms. *Id.* Thus, as noted by Senator Larry Craig of Idaho, one of the sponsors of the Act, PLCAA is intended to stop litigation "that attempt[s] to pin the blame and the cost of criminal behavior on businesspeople who are following the law and selling a legal product. In fact, the one consumer product where access is protected by nothing less than our Constitution itself is our firearms, and that is exactly what is at stake []: the right of law-abiding American consumers, American citizens, to have access to a robust and productive marketplace in the effective manufacturing and sale of firearms."

151 Cong. Rec. S9807-01 (daily ed. June 27, 2005) (statement of Sen. Craig).[1]

PLCAA specifically sets forth the findings upon which Congress based the passage of the Act. As expressly stated, Congress found, *inter alia*, that the Second Amendment of the United States Constitution protects the rights of individuals to keep and bear arms; lawsuits have been brought against the firearms industry seeking damages for harm caused by the misuse of firearms by third parties, including criminals; and such lawsuits are done for the purpose of having the judicial branch circumvent the legislative branch of government thereby threatening the separation of powers doctrine and the principles of federalism and comity between states. 15 U.S.C. § 7901(a). Thus,

> [t]he possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

---

[1] During the debates, Senator Craig emphasized the limitations imposed by PLCAA as it "is not a gun industry immunity bill". 151 Cong. Rec. S9807-01 (daily ed. June 27, 2005) (statement of Sen. Craig). "This bill does not create a legal shield for anybody who manufactures or sells a firearm. It does not protect members of the gun industry from every lawsuit or legal action that could be filed against them. It does not prevent them from being sued for their own misconduct. This bill only stops one extremely narrow category of lawsuits, lawsuits that attempt to force the gun industry to pay for the crimes of third parties over whom they have no control." *Id.*

***Id.*** at § 7901(a)(6).

Under PLCAA, "[a] qualified civil liability action[2] may not be brought in any Federal or State court". ***Id.*** at § 7902(a). However, six exceptions apply to this rule, including "an action for death . . . resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death . . .". ***Id.*** at § 7903(5)(A)(v). As Judge Kunselman correctly found, this exception does not apply in this case. ***See*** Kunselman Opinion at 5-11. Accordingly, PLCAA is applicable to the Gustafsons' claims and, so long as PLCAA is deemed constitutional, will bar said claims.

## Constitutionality of PLCAA

Since its enactment in October 2005, the constitutionality of PLCAA has been challenged in various state and federal courts. Every appellate court

---

[2] A "qualified civil liability action" is defined in relevant part as "a civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party". 15 U.S.C. § 7903(5)(A). The firearm and ammunition used in this case meet the definition of a "qualified product". ***See id***. at § 7903(4).

that has addressed these issues have found that PLCAA passes constitutional muster.[3]

## A.    The Commerce Clause

In their original brief filed with this Court, the Gustafsons devote less than two pages to their argument that Congress had no authority under the Commerce Clause to enact PLCAA.  Appellants' Brief at 47-49.  In their underdeveloped argument, the Gustafsons argue that the trial court did not explain how its decision "comports with [the] requirement that permissible preemption involve[s] regulation of private actors, not sovereign states – or how allowing unlimited liability in states with codified liability standards, but no liability in states that rely on common law, is a rational regulation of interstate commerce."  *Id.* at 48.  Following the order granting *en banc* consideration, the Gustafsons filed a supplemental brief in which they agree

---

[3] *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), *cert denied* 556 U.S. 1104 (2009); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016); *Estate of Kim v. Coxe*, 295 P.3d 380 (Ak. 2013); *Adames v. Sheahan*, 909 N.E. 2d 742 (Ill. 2009), *cert. denied sub. nom. Adames v. Beretta U.S.A. Corp.*, 558 U.S. 1100 (2009); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008), *cert. denied sub. nom. Lawson v. Beretta U.S.A. Corp*., 556 U.S. 1104 (2009).  I note that the United States Supreme Court has denied each of the writs of *certiorari* filed in the cases dealing with the constitutionality of PLCAA.  I further note that this Court "is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts ... [H]owever, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1207 (Pa. Super. 2011) (internal citation omitted).

with the original panel's finding that the Commerce Clause prohibited Congress from enacting PLCAA; however they clarify their argument as follows:

> PLCAA's constitutional deficiency does not hinge on a finding that litigation is not sufficiently related to commercial activity. PLCAA violates the Commerce Clause because it targets *the states themselves*, rather than any private individuals or any arguably commercial activity, by dictating to the states how they must exercise their lawmaking functions. State decisions on how to distribute lawmaking functions among the branches of state government – namely, whether liability standards should be generated through judicial development of the common law or through legislation – are not commercial activity within the proper ambit of Congress's Commerce Clause authority.

Appellants' Supplemental Brief at 6 (emphasis in original).[4]

The Gustafsons' argument regarding the Commerce Clause is misplaced. Instead of arguing that Congress lacked authority under the Commerce Clause to regulate interstate and international commerce of firearms, the Gustafsons repackage their argument regarding the Tenth Amendment in terms of the Commerce Clause; *i.e.* state decisions on whether liability standards should be established via common law or through legislation is not commercial activity that may be regulated by Congress. As will be addressed *infra*, this argument is meritless.

---

[4] In her dissenting opinion, Judge Murray suggests that we could find that the Gustafsons waived their argument regarding the Commerce Clause by failing to present "a cogent legal argument on this issue". Dissenting Opinion (Murray, J.) at 18. I agree the argument is underdeveloped, but I do not agree that the issue should be deemed to be waived.

Notwithstanding the Gustafson's faulty argument, Judge Kunselman concludes that "PLCAA is not a valid exercise of Congress's Commerce Clause authority". Kunselman Opinion at 32. In reaching this conclusion, Judge Kunselman ignores the cases that have expressly considered the application of the Commerce Clause to PLCAA, and instead, does her own analysis based upon the United State Supreme Court's "historical interpretation" of the Commerce Clause. *Id.* at 15. I believe that this "historical interpretation" is flawed.

The United States Constitution vests Congress with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its authority to "regulate Commerce with foreign Nations, and among the several States". U.S. CONST. art. I, § 8. In determining whether Congress has authority to pass various pieces of legislation pursuant to the Commerce Clause, the United States Supreme Court acknowledges that "[t]he path of [the Court's] Commerce Clause decisions has not always run smooth". ***Nat'l Fed'n of Indep. Bus. v. Sebelius***, 567 U.S. 519, 549 (2003). However, "it is now well established that Congress has broad authority under the Clause." ***Id.*** In assessing Congress' authority under the Commerce Clause, the Supreme Court "afford[s] Congress the leeway to undertake to solve national problems directly and realistically" and the approach to judge whether Congress properly exercised its authority is guided by two principles:

> First, Congress has the power to regulate economic activities that substantially affect interstate commerce. This capricious power

extends even to local activities that, viewed in the aggregate, have a substantial impact on interstate commerce. [**Wickard v. Filburn**, 317 U.S. 111, 125 (1942)] ("[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, *whatever its nature*, be reached by Congress if it exerts a substantial economic effect on interstate commerce.") (emphasis added)).

Second, we owe a large measure of respect to Congress when it frames and enacts economic and social legislation. **Pension Benefit Guaranty Corporation v. R.A. Gray & Co.**, 467 U.S. 717, 729 (1984) ("[S]trong deference [is] accorded legislation in the field of national economic policy."); **Hodel v. Indiana**, 452 U.S. 314, 326 (1981) ("[The Supreme] Court will certainly not substitute its judgment for that of Congress unless the relation of the subject to interstate commerce and its effect upon it are clearly non-existent."). When appraising such legislation, we ask only (1) whether Congress had a rational basis for concluding that the regulated activity substantially affects interstate commerce, and (2) whether there is a reasonable connection between the regulatory means selected and the asserted ends.

In answering these questions, we presume the statute under review is constitutional and may strike it down only on a plain showing that Congress acted irrationally.

*Id.* at 601-603 (Ginsberg, J., concurring and dissenting) (some quotation marks, parentheticals, and citations omitted) (emphasis in original); **see also NLRB v. Jones & Laughlin Steel Corp.**, 301 U.S. 1, 37 (1937) ("Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control."). Moreover, Congress' power under the Commerce Clause includes the power to regulate "purely local activities that are part of an economic 'class of

activities' that have a substantial effect on interstate commerce". ***Gonzales v. Raich***, 545 U.S. 1, 17 (2005) (Congress had power to regulate the growing and consumption of marijuana that took place entirely within a state). Congress' power under the Commerce Clause also extends to the imposition of restrictions on civil litigation if Congress concludes that the restrictions will promote interstate commerce. ***Pierce County v. Guillen***, 537 U.S. 129, 147 (2003) (Congress had authority to pass federal statute that barred the use of documents in civil trials that were prepared or collected by state authorities pursuant to a federal program to identify hazardous sections of state highways).

PLCAA was enacted to promote interstate and foreign commerce in firearms. 15 U.S.C. § 7901(a)(6) (the possibility that manufacturers, distributors and sellers of firearms would be held liable in legal actions of the type foreclosed by the Act "constitutes an unreasonable burden on interstate and foreign commerce of the United States"). Courts "must defer" to the finding that the firearms industry operates in interstate and foreign commerce as long as there is a rational basis for the finding. ***Preseault v. I.C.C.***, 494 U.S. 1, 17 (1990).

The Second Circuit Court of Appeals followed the general guidelines noted above in holding that Congress had authority under the Commerce Clause to enact PLCAA. In ***City of New York v. Beretta U.S.A. Corp.***, 524 F.3d 384 (2d Cir. 2008), *cert. denied* 556 U.S. 1104 (2009), the court noted

that there are three general categories of regulation in which Congress is authorized to act under the Commerce Clause: 1) Congress may regulate the channels of interstate commerce; 2) Congress may regulate the instrumentalities of interstate commerce; and 3) Congress may regulate "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.[5]" ***Id.*** at 393. It is the third category of regulation that is implicated with respect to the enactment of PLCAA. ***Id.*** Relying on ***U.S. v. Lopez***, 514 U.S. 549 (1995)[6] and ***U.S. v. Morrison***, 529 U.S. 598 (2000)[7], the City of New York argued

_____

[5] In further defining the third category of regulation under the Commerce Clause, the Second Circuit Court of Appeals stated "[a]lthough activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control." ***City of New York***, 524 F.3d at 393, *quoting* ***NLRB v. Jones & Laughlin Steel Corp.***, 301 U.S. 1, 37 (1937).

[6] In ***Lopez***, the Supreme Court held that Congress exceeded its authority in passing the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) (1988 & Supp. V), which criminalized the possession of a gun within a school zone. The Supreme Court found that the link between the possession of a gun by a local student in a local school zone and a substantial effect on interstate commerce was weak at best and, therefore, violative of the Commerce Clause.

[7] In ***Morrison***, the federal government argued that gender-motivated violence that prompted the passing of the Violence Against Women Act, 42 U.S.C. § 13981 affected interstate commerce by deterring potential victims from traveling interstate and engaging in interstate business employment. The Supreme Court rejected this argument as there was no basis to connect the initial occurrence of a violent crime against a woman to interstate commerce.

that the activity that PLCAA seeks to regulate – civil lawsuits against the firearms industry for harm caused by the unlawful acts of third parties – was outside Congress' regulatory power. The Second Circuit rejected this argument, finding that "the connection between the regulated activity and interstate commerce under [PLCAA] is far more direct than that in **_Morrison_** and **_Lopez_**." **_Id._** at 394 (quotation marks, citations, and corrections omitted). The court went on to explain:

> When enacting [] PLCAA, Congress explicitly found that the third-party suits that [PLCAA] bars are a direct threat to the firearms industry, whose interstate character is not questioned. Furthermore, [] PLCAA only reaches suits that have an explicit connection with or effect on interstate commerce. . . . Accordingly, unlike the Gun-Free School Zones Act and Violence Against Women Act, [] PLCAA raises no concerns about Congressional intrusion into "truly local" matters. . . .
>
> We agree that the firearms industry is interstate – indeed, international – in nature. Of course, we acknowledge that simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so. We also should not and do not express any opinion as to the accuracy of the Congressional findings with respect to [PLCAA]. Nevertheless, due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds. There has been no such showing here. We find that Congress has not exceeded its authority in this case, where there can be no question of the interstate character of the industry in question and where Congress rationally perceived a substantial effect on the industry of the litigation that [PLCAA] seeks to curtail.

**_Id._** at 394-395 (citations, corrections, and some quotation marks omitted).

A year after the Second Circuit Court of Appeals found that Congress did not exceed its authority under the Commerce Clause in enacting PLCAA, the Ninth Circuit Court of Appeals likewise upheld the constitutionality of the Act. In ***Ileto v. Glock, Inc.***, 565 F.3d 1126 (9th Cir. 2009), *cert. denied* 560 U.S. 924 (2010), Bufford Furrow, who was carrying at least seven firearms which he possessed illegally, shot and injured five people at a summer camp and later that day shot and killed Joseph Ileto. The shooting victims and Mr. Ileto's wife filed a lawsuit pursuant to California common law tort statutes against the manufacturers, marketers, importers, distributors, and sellers of the firearms. Four years after the plaintiffs' lawsuit was filed, Congress passed PLCAA. The defendants sought the dismissal of the lawsuit in light of PLCAA's ban against such actions. The district court dismissed some of the claims against certain defendants but permitted claims against other defendants to proceed. On appeal, the plaintiffs argued that the district court erred in applying PLCAA to the California tort claims brought against the defendants and, alternatively, that PLCAA was unconstitutional. The Ninth Circuit disagreed with the plaintiffs, finding that PLCAA preempted the California tort claims and PLCAA was constitutional.

As to the constitutionality of PLCAA, the plaintiffs argued in part that PLCAA violated the equal protection and substantive due process principles embodied in the Constitution. In rejecting this argument, the Ninth Circuit noted that the plaintiffs faced "an uphill battle" since "barring irrational or

arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit. Indeed, the Supreme Court has not blanched when settled economic expectations were upset, as long as the legislature was pursuing a rational policy." *Id.* at 1140 (citations, quotation marks, and corrections omitted). The court went on to hold as follows:

> There is nothing irrational or arbitrary about Congress' choice here: It saw fit to "adjust the incidents of our economic lives" by preempting certain categories of cases brought against federally licensed manufacturers and sellers of firearms. In particular, Congress found that the targeted lawsuits "constitute an unreasonable burden on interstate and foreign commerce of the United States" and sought "to prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce". Congress carefully constrained [PLCAA's] reach to the confines of the Commerce Clause.

*Id.* at 1140 (citations and corrections omitted). In relying in part on the Second Circuit Court of Appeals' reasoning in *City of New York* and the District of Columbia Court of Appeals' decision in *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008), *cert. denied sub. nom., Lawson v. Beretta U.S.A. Corp.*, 556 U.S. 1104 (2009)[8], the Ninth Circuit explained:

> Plaintiffs disagree with Congress' judgment in this regard. In their view, the firearms industry is subject to relatively few lawsuits compared to other major industries and, in any event, the pending

---

[8] In finding PLCAA constitutional, the *District of Columbia* case held in part: "PLCAA . . . is reasonably viewed as an adjustment of the burdens and benefits of economic life by Congress, one it deemed necessary in exercising its power to regulate interstate commerce." *District of Columbia*, 940 A.2d at 175 (quotation marks, citations, and corrections omitted).

lawsuits could not possibly have an appreciable effect on the firearms industry (and, by extension, on interstate or foreign commerce). We need not tarry long on these considerations, because our only task is to consider whether Congress' chosen allocation was irrational or arbitrary. We have no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected.

*Ileto*, 565 F.3d at 1140-1141 (citations and quotation marks omitted).

I agree with the holdings of the Second and Ninth Circuit Courts of Appeal. There is no question that Congress considered the impact that multiple lawsuits filed against manufacturers, distributors, and sellers of firearms have on the industry. The costs associated with those lawsuits and the negative effect damages awards could have on the economic survival of the industry was rationally found to have an impact on interstate and foreign commerce.[9] Congress did not act irrationally or arbitrarily in making this finding but gathered relevant data and considered input from stakeholders

_____

[9] Judge Kunselman takes exception to Congress' findings that the cost of litigation against the firearms industry has a significant impact on interstate and foreign commerce. Specifically, she states "history has shown that litigation against manufacturers and seller[s] of products in other industries does **not** substantially affect the free flow of such products among the several States. The costs of such lawsuits and any damages imposed are ultimately folded into the cost of the products. In that way, tort victims receive compensation, manufacturers produce safer products, and the cost of litigation and subsequent improvements is shared by those who actively participate in the marketplace." Kunselman Opinion at 27 (emphasis in original). Not only does Judge Kunselman fail to cite to any support for these conclusions, but these findings directly conflict with well-established precedent that Congress' factual findings are entitled to great deference.

before enacting PLCAA.[10]  Courts that have considered this issue have not "blindly accepted Congress'[] judgment of its own Commerce Clause authority", as Judge Kunselman suggests.  Kunselman Opinion at 17.  Instead, they followed the Supreme Court's prevailing jurisprudence when analyzing the Act.  ***See Walters v. Nat'l Ass'n of Radiation Survivors***, 473 U.S. 305, 330 n.12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue.").[11]

Judge Kunselman dismisses out of hand the holdings of the Second and Ninth Circuit Courts of Appeal.  First, she concludes that "***Ileto*** is not a Commerce Clause case" and, therefore is irrelevant to the "issue at hand." Kunselman Opinion at 14, 15.  I find this puzzling as the above-referenced

---

[10] Judge Kunselman implies that Congress had no evidence upon which to conclude that certain defined lawsuits against the firearms industry had an adverse impact on interstate and foreign commerce.  Kunselman Opinion at 26-27.  In refutation, I point to the record of the extensive debates of the 109th Congress that took place prior to the enactment of PLCAA.

[11] Judge Kunselman criticizes the trial court for not conducting its own analysis as to "whether the intrastate activities that Congress sought to regulate under PLCAA substantially affect interstate commerce."  Kunselman Opinion at 17. However, such an analysis would be contrary to Supreme Court dictates.  ***See Rostker v. Goldberg***, 453 U.S. 57, 72-83 (1981) (critical of the trial court's review of the factual findings and legislative history compiled by Congress prior to enacting the statute, as it was "wrong in undertaking an independent evaluation of this evidence, rather than adopting an appropriately deferential examination of *Congress'* evaluation of that evidence") (emphasis in original).

discussion clearly establishes that, although the plaintiffs in *Ileto* argued that PLCAA violated the substantive due process and equal protection principles under the Fifth Amendment, the Ninth Circuit expressly addressed Congress' authority under the Commerce Clause in enacting PLCAA. *See supra* at **13-15; *see also Ileto*, 565 F.3d at 1140 (declaring: "**Congress carefully constrained [PLCAA's] reach to the confines of the Commerce Clause**. *See*, *e.g.*, [15 U.S.C.] § 7903(2) (including an interstate- or foreign-commerce element in the definition of a 'manufacturer'); *id.* § 7903(4) (same: 'qualified product'); *id.* § 7903(6) (same: 'seller')") (emphasis added).

Judge Kunselman's rejection of the Second Circuit's *City of New York* decision is even more perplexing. Although she acknowledges that the Second Circuit found that PLCAA did not violate the Commerce Clause, she found the court's "reasoning unpersuasive in light of more recent Supreme Court authority." Kunselman Opinion at 20. Judge Kunselman then relies on the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, *supra* to conclude that Congress exceeded its authority under the Commerce Clause in enacting PLCAA. I find that her reliance on *Sebelius* is misplaced.

In *Sebelius*, the Supreme Court held that the Patient Protection and Affordable Care Act ("Affordable Care Act") violated the Commerce Clause as the individual mandate provision of the Act required most Americans to

maintain health insurance coverage.  In finding that Congress lacked authority under the Commerce Clause to enact the Affordable Care Act's individual mandate, the Court found:

> The individual mandate [under the Affordable Care Act] does not regulate existing commercial activity.  It instead compels individuals to *become* active in commerce by purchasing a product, on the ground that their failure to do so affects interstate commerce.  Construing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority.  Every day individuals do not do an infinite number of things.  In some cases they decide not to do something; in others they simply fail to do it.  Allowing Congress to justify federal regulation by pointing to the effect of inaction on commerce would bring countless decisions an individual could *potentially* make within the scope of the federal regulation, and – under the Government's theory – empower Congress to make those decisions for him.

***Sebelius***, 567 U.S. at 552 (emphasis in original).  Thus, the Court held "[t]he Affordable Care Act is . . . unconstitutional in part.  The individual mandate cannot be upheld as an exercise of Congress's power under the Commerce Clause.  That Clause authorizes Congress to regulate interstate commerce, not to order individuals to engage in it."  ***Id.*** at 588.

In concluding that ***Sebelius*** controls, Judge Kunselman finds that "Congress commits the same constitutional overreach in PLCAA.  The Act regulates the inactivity of individuals who may ***never*** have engaged in a commercial transaction with the gun industry.  As this case demonstrates, PLCAA reaches out and forces J.R. Gustafson and his parents to provide financial support for the gun industry by foregoing their tort claims against its

members." Kunselman Opinion at 22 (emphasis in original). I cannot agree with this analysis (and I further note that the Gustafsons do not make this argument). Unlike the Affordable Care Act which was directed at individuals who chose **not** to engage in commercial activity by failing to purchase health insurance, PLCAA is directed at those individuals, like the Gustafsons, who chose **to** engage in commercial activity (*i.e.* litigation) that Congress found substantially affects interstate commerce (a finding to which great deference must be given).[12] PLCAA does not force anyone to engage in commerce –

---

[12] Judge Kunselman takes exception to my analysis of **Sebelius** by pointing out the difference between litigation and commerce. As she cogently states, "[l]itigation is not commerce." Kunselman Opinion at 23 n. 15. I agree. I do not claim that litigation is commerce. Instead, I, like Congress, conclude that litigation can be an **economic activity** that **affects** commerce. As the Supreme Court has made abundantly clear "[E]ven if [an] activity be local **and though it may not be regarded as commerce**, it may still, whatever its nature, be reached by Congress **if it exerts a substantial economic effect** on interstate commerce." **Wickard v. Filburn**, 317 U.S. 111, 125 (1942) (emphasis added). In enacting PLCAA, Congress determined that certain targeted litigation against the gun industry was an activity, "whatever its nature", that exerted "a substantial economic effect on interstate commerce". Moreover, as already noted, we must defer to Congress in enacting economic legislation. **Pension Benefit Guaranty Corp. v. R.A. Gray & Co.**, 467 U.S. 717, 729 (1984) ("[s]trong deference [is] accorded legislation in the field of national economic policy.").

Additionally, Judge Kunselman makes the unfounded claim that, if the costs associated with litigation justify Congressional action under the Commerce Clause, then "**all cases** in state court would instantly come within Congressional control" since "[e]very law or ordinance that any state, county or municipality adopts eventually leads to litigation, where at least one party will suffer a financial detriment." Kunselman Opinion at 28, 29. (emphasis in original). She makes this monumental leap by completely ignoring the limits of Congress' powers under the Commerce Clause. Specifically, Judge
*(Footnote Continued Next Page)*

instead, it prohibits certain limited commercial activities that have a substantial effect on interstate and foreign commerce. Hence, **Sebelius** lends no support to the conclusion that PLCAA violates the Commerce Clause.

For the foregoing reasons, I conclude that Congress had the authority under the Commerce Clause to enact PLCAA.

## B.    The Tenth Amendment

The Gustafsons argue, and Judge Kunselman agrees, that PLCAA violates the Tenth Amendment by invading the province of state sovereignty. I disagree.

The Tenth Amendment to the United States Constitution provides, "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people." U.S. CONST., amend. X. The Gustafsons contend that PLCAA violates this amendment because the Act "bars states from imposing liability on negligent gun companies if states have chosen to have their judiciaries establish the relevant liability standards through common law (like Pennsylvania), while allowing identical claims if the states used their legislatures to establish the relevant liability standards. However, Congress has no permissible authority to infringe on a state's

_____

Kunselman fails to do the appropriate analysis outlined by the High Court in reaching this untenable conclusion, *i.e.*, whether the hypothetical litigation that arises out of these hypothetical laws "has such a close and substantial relation to interstate commerce that [its] control is essential or appropriate to protect that commerce from burdens and obstructions". **NLRB**, 301 U.S. at 37.

decision of which branch of government it chooses to make law." Appellants' Brief at 34-35 (citation omitted). The Gustafsons' argument stems from one of the exceptions to PLCAA's ban on lawsuits against the firearms industry. Specifically, PLCAA permits lawsuits against the firearms industry to proceed if "a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of a product, and the violation was a proximate cause of the harm for which relief is sought". 15 U.S.C. § 7903(5)(A)(iii). The Gustafsons argue (and Judge Kunselman agrees) that this exception eliminates all state common law tort claims against the firearms industry while permitting tort claims to proceed in states which have codified their tort laws; hence, the Act infringes on states' rights to enact their laws the way they see fit in violation of the Tenth Amendment. This analysis fails for several reasons.

First, the Gustafsons' argument – PLCAA allows lawsuits against the firearms industry to proceed in states with codified liability – is inapplicable to the product liability claims brought in this case. The exception to PLCAA's ban on qualified civil liability actions set forth in § 7903(5)(A)(iii) is known as the "predicate" exception and applies **only** to the knowing violation of a statute dealing with the sale or marketing of a firearm. ***Ileto v. Glock, Inc.***, 421 F. Supp. 2d 1274, 1296 (C.D. Cal. 2006), *aff'd* 565 F.3d 1126 (9th Cir. 2009). The predicate exception does not apply to statutes governing the design of firearms. The Gustafsons' claims allege design defects and,

therefore, are governed by PLCAA's design defect exception codified in § 7903(5)(A)(v). The design defect exception does not differentiate between manufacturing or design defect claims based upon product liability statutes or common law. Thus, even if a claimant brought a design defect claim in a state that has codified its product liability laws, the claim would be barred unless the claim fell within PLCAA's design defect exception. As thoroughly addressed by Judge Kunselman in Part I of her opinion, the Gustafsons' design defect claims do not fall within PLCAA's design defect exception. Therefore, even if Pennsylvania codified its product liability laws, the Gustafsons' claims would be barred under PLCAA. *See Ileto*, 565 F.3d at 1137 ("PLCAA preempt[s] . . . theories of liability even in jurisdictions . . . that have codified such causes of action").

Even if the predicate exception applied, the Tenth Amendment would not bar the application of the Act to the Gustafsons' claims. As the Tenth Amendment expressly states, "**powers not delegated to the United States by the Constitution** . . . are reserved to the States". U.S. CONST., amend. X (emphasis added). Here, PLCAA was enacted pursuant to the power to regulate interstate and foreign commerce and that power was expressly delegated to Congress through the Commerce Clause. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. U.S.*, 505 U.S. 144, 156 (1992). Hence, PLCAA cannot be deemed to violate the Tenth

Amendment unless it violates the anticommandeering doctrine. *Travieso v. Glock, Inc.*, 526 F. Supp. 3d 533, 549 (D. Ariz. 2021) ("when Congress passes a law pursuant to the enumerated powers delegated to it under the Constitution, the only applicable limitation to it is its anti-commandeering doctrine").

As the United States Supreme Court explained, "[t]he anticommandeering doctrine may sound arcane, but it is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. NCAA*, ___ U.S. ___, 138 S. Ct. 1461, 1475 (2018). Under this doctrine, Congress is prohibited from commandeering state legislatures by requiring them to enact certain laws. *New York v. U.S.*, 505 U.S. at 161 ("Congress may not simply commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program"). Secondly, the doctrine prohibits Congress from commanding executive branch members of a state to "administer or enforce a federal regulatory program." *Printz v. U.S.*, 521 U.S. 898, 903 (1997).

Congress had the express authority to enact PLCAA under its enumerated powers granted by the Commerce Clause to regulate interstate and foreign commerce. Thus, the only way PLCAA could violate the Tenth Amendment is if the Act commands state legislatures to enact a particular law or state executive officials to administer a federal law. PLCAA does neither.

As the Second Circuit Court of Appeals succinctly noted, "PLCAA does not commandeer any branch of state government because it imposes no affirmative duty of any kind on any of them. [] PLCAA therefore does not violate the Tenth Amendment." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) (quotation marks and citations omitted); *see also Adames v. Sheahan*, 909 N.E.2d 742, 765 (Ill. 2009) ("[B]ecause PLCAA is a valid exercise of the federal power to regulate interstate commerce, Congress has not intruded upon an area of authority traditionally reserved to the states and does not impermissibly commandeer the states or their officials in violation of the [T]enth [A]mendment."). Hence, PLCAA does not run afoul of the Tenth Amendment. [13]

## C.    Fifth Amendment – Due Process

_____

[13] Judge Kunselman relies on *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) to support her conclusion that PLCAA violates the Tenth Amendment as the Act disfavors common law and prefers statutes enacted by state legislatures. Kunselman Opinion at 33-35. *Erie* does not support this holding. *Erie* stands for the proposition that there is no federal general common law. *Erie*, 304 U.S. at 78. *Erie* makes clear that "[s]upervision over either the legislative or the judicial action of the states is in no case permissible **except as to matters by the constitution specially authorized or delegated to the United States.***" Id.* at 79 (emphasis added). Hence, a state is free to make its own common law "providing there is no overriding federal rule which pre-empts state law by reason of federal curbs on trading in the stream of commerce." *Lehman Bros. v. Schein*, 416 U.S. 386, 389 (1974). Here, the Constitution specifically authorizes Congress to regulate interstate and foreign commerce; therefore, state law is permissibly preempted.

The Gustafsons argue that PLCAA violates their right to due process guaranteed by the Fifth Amendment[14] because "it eliminates any remedy for victims of gun industry negligence like [the Gustafsons]" without "providing a reasonable alternative remedy". Appellants' Brief at 39. PLCAA does not violate the Gustafsons' right to due process because 1) they do not have a protected property right in an unvested common law claim[15]; and 2) PLCAA contains exceptions that allow certain claims against the firearms industry to proceed; hence, the industry does not have complete immunity.

The Gustafsons do not assert that they have a protected property right in their unvested common law claim. Instead, they argue solely that, as a result of PLCAA, their access to the courts has been eliminated with no viable alternative. Yet, as the court in *City of New York* cogently stated "PLCAA immunizes a specific type of defendant from a specific type of suit. It does not impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs". *City of New York*, 524 F.3d at 398; *see also Ileto*, 565 F.3d at 1143 ("PLCAA does not completely abolish [p]laintiffs' ability to seek redress.

---

[14] The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST., amend. V.

[15] It is well established that, although a cause of action is a "species of property", a party's property right in a cause of action does not vest until a final, reviewable judgment is obtained. *Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1299, *aff'd* 565 F.3d 1126 (9th Cir. 2009) (citations omitted). Here, the Gustafsons have not obtained a final, reviewable judgment.

[The Act] preempts certain categories of claims that meet specified requirements, but it also carves out several significant exceptions to the general rule. Some claims are preempted, but many are not."); *District of Columbia v. Beretta U.S.A. Corp.,* 940 A.2d 163, 177 n.8 (D.C. 2008) (Congress did not deprive injured persons of all potential remedies); *Estate of Kim v. Coxe*, 295 P.3d 380, 391 (Ak. 2013) (following other courts in concluding that plaintiffs' due process rights were not violated).

As noted by the other courts who have considered this issue, PLCAA does not foreclose all lawsuits against manufacturers and sellers of firearms. To the contrary, it only eliminates certain identified claims. Moreover, PLCAA does not prevent the Gustafsons from suing the young man who shot their son or the homeowner whose gun was used in the shooting. *See Travieso*, 526 F. Supp. 3d at 549 ("Plaintiff may still pursue remedies against the owner of the gun and the actual shooter who caused him harm; he simply elected not to."). As such, the Gustafsons' rights under the Due Process Clause of the Fifth Amendment have not been violated.

## D.    Fifth Amendment – Equal Protection

The Gustafsons argue that their right to equal protection under the Fifth Amendment has been violated as PLCAA "discriminat[es] between classes of tort plaintiffs without any rational basis." Appellants' Brief at 44. Specifically, they assert "PLCAA creates a discriminatory judicial system in which persons injured by gun industry negligence in states with legislation codifying

judicially-created liability standards can recover damages; those harmed on identical facts in states which rely on common law standards cannot recover; and those injured from identical negligence from unlicensed gun sellers or from defectively designed bb guns can recover everywhere". *Id*. The Gustafsons' equal protection argument is similar to their Tenth Amendment argument and likewise fails.

Although the Fifth Amendment does not specifically refer to equal protection, the United States Supreme Court repeatedly has found there to be an "equal protection component of the Due Process Clause of the Fifth Amendment." *U.S. v. Armstrong*, 517 U.S. 456, 464 (1996). However,

> [w]hether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993). As was succinctly stated by the Ninth Circuit Court of Appeals, "barring irrational or arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit. Indeed, the Supreme Court has not blanched when settled economic exceptions were upset, as long as the legislature was pursuing a rational policy." *Ileto*, 565 F.3d at 1140 (quotation marks, citations, and corrections omitted). As the Gustafsons concede, we must apply a rational basis review in determining whether PLCAA violates the Fifth Amendment's

equal protection clause. Under this standard, "a classification must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation marks and citations omitted). In applying this highly deferential standard to PLCAA, it is clear that Congress was pursuing a rational policy by enacting PLCAA. Congress determined that certain lawsuits "threatened constitutional rights, destabilized industry, and burdened interstate commerce. Protecting constitutional rights and interstate commerce is a legitimate purpose and barring certain types of tort suits while allowing others is a rational way to pursue this legitimate purpose." *Estate of Kim*, 295 P.3d at 392 (footnote omitted).

Moreover, as previously noted, the Gustafsons' claims allege design defects and, therefore, are governed by PLCAA's design defect exception codified in § 7903(5)(A)(v). This exception does not differentiate between manufacturing or design defect claims based upon product liability statutes or common law. Even if Pennsylvania codified its product liability laws, the Gustafsons' claims would be barred under PLCAA. *Supra* at 20. Hence, there is no due process violation.

### III.

### Conclusion

I agree with Judge Kunselman that PLCAA applies to the Gustafsons' product liability claims brought against the Appellees. However, I disagree

that PLCAA is unconstitutional.  Like the other courts that have addressed the constitutionality of this Act, I find that Congress had the express authority under the Commerce Clause to enact PLCAA; nothing in PLCAA commandeers the states' legislative or executive branches in violation of the Tenth Amendment; and there is no infringement of the Gustafsons' rights to due process and equal protection under the Fifth Amendment.  Therefore, I would affirm the able trial court's order sustaining the Appellees' preliminary objections and dismissing the Gustafsons' complaint.

Judge Bowes and Judge McCaffery join.

Judge Murray concurs in the result.